**KODY CREE PATTEN**
Name
**1091721**
Prison Number
**LOVELOCK CORRECTIONAL CENTER**
Place of Confinement

```
┌─────────────────────────────────────┐
│ ___ FILED          ✓ RECEIVED        │
│ ___ ENTERED          SERVED ON       │
│           COUNSEL/PARTIES OF RECORD  │
│   ┌──────────────────┐               │
│   │  JUL 11 2022     │               │
│   │                  │               │
│   │ "COPY RETURNED"  │               │
│   CLERK US DISTRICT COURT            │
│        DISTRICT OF NEVADA            │
│ BY: _____ DEPUTY   │
│        "COPY RETURNED"               │
└─────────────────────────────────────┘
```

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEVADA

|   |   |
|---|---|
| **KODY CREE PATTEN**, Petitioner, ) <br> (Full Name) ) <br> vs. ) <br> ) <br> **GARRETT** (warden), Respondent, ) <br> (Name of Warden, Superintendent, jailor or ) <br> authorized person having custody of petitioner) ) <br> ) <br> and ) <br> ) <br> The Attorney General of the State of Nevada ) | CASE NO. ____ **3:22-cv-00310** <br> (To be ~~supplied by the Clerk~~) <br><br> **PETITION FOR A** <br> **WRIT OF HABEAS CORPUS** <br> **PURSUANT TO 28 U.S.C. § 2254** <br> **BY A PERSON IN STATE CUSTODY** <br> (**NOT** SENTENCED TO DEATH) |

---

1. Name and location of court, and name of judge,  that entered the judgment of conviction you are challenging:   **4TH JUDICIAL DISTRICT COURT, Elko County, Honorable Judge Hill.**

2. Full date judgment of conviction was entered: **09 / 07 / 2012** .  (month/day/year)

3. Did you appeal the conviction? ___ Yes **X** No.  Date appeal decided: ____ / ____ / ____

4. Did you file a petition for post-conviction relief or petition for habeas corpus in the state court? **X** Yes ___ No. If yes, name the court and date the petition was filed: **4TH JUDICIAL DISTRICT COURT** **02 / 20 / 2013**.  Did you appeal from the denial of the petition for post-conviction relief or petition for writ of habeas corpus? **X** Yes ___ No. Date the appeal was decided: **02 / 18 / 2022**. Have all of the grounds stated in this petition been presented to the state supreme court? **X** Yes ___ No.  If no, which grounds have not? _____

5. Date you are mailing (or handing to correctional officer) this petition to this court: **7 / 4 / 22** .
   **Attach to this petition a copy of all state court written decisions regarding this conviction.**

LCC LL FORM  36.068

6. Is this the first federal petition for writ of habeas corpus challenging this conviction?   **X** Yes
   ___ No.   If no, what was the prior case number ? _____.   And in what court was
the   prior action filed? _____.
   Was the prior action   ___ denied on the merits  or ____  dismissed for procedural reasons  (check
   one).  Date of decision:   ____ / ____ / ____ .   Are any of the issues in this petition raised in the
   prior petition?   ____ Yes ____ No.   If the prior case was denied on the merits, has the Ninth
   Circuit Court of Appeals given you permission to file this successive petition? ___ Yes ___ No.

7. Do you have any petition, application, motion or appeal (or by any other means) now pending in
   any court regarding the conviction that you are challenging in this action?   ____ Yes  **X** No.
   If yes, state the name of the court and the nature of the proceedings: _____
   _____.

8. Case number of the judgment of conviction being challenged:  CV-HC-13-0116 _____.

9. Length and terms of sentence(s): Life without possibility of parole, plus 8-20 years. _____.

10. Start date and projected release date: March 7th, 2011; No projected release. _____.

11. What was (were) the offense(s) for which you were convicted: First Degree Murder with Use
   Of A Deadly Weapon, plus the weapon enhancement. _____.

12. What was your plea?  **X** Guilty  ___ Not Guilty  ___ Nolo Contendere. If you pleaded guilty
   or nolo contendere pursuant to a plea bargain, state the terms and conditions of the agreement:
   To serve Life Without Parole, plus 8-20 years, and pay restitution and court fees _____.

13. Who was the attorney that represented you in the proceedings in state court?  Identify whether
   the attorney was appointed, retained, or whether you represented yourself *pro se* (without counsel).

| | Name of Attorney | Appointed | Retained | *Pro se* |
|---|---|---|---|---|
| arraignment and plea | JOHN OHLSON & JEFFREY KUMP | X | ____ | ____ |
| trial/guilty plea | SAME | ____ | ____ | ____ |
| sentencing | SAME | ____ | ____ | ____ |
| direct appeal | N/A | ____ | ____ | ____ |
| 1st post-conviction petition | RICHARD SEARS | X | ____ | ____ |
| appeal from post conviction | RICHARD SEARS | X | ____ | ____ |
| 2nd post-conviction petition | N/A | ____ | ____ | ____ |
| appeal from 2nd post-conviction | N/A | ____ | ____ | ____ |

State concisely every ground for which you claim that the state court conviction and/or sentence is unconstitutional. Summarize briefly the facts supporting each ground. You may attach up to two extra pages stating additional grounds and/or supporting facts. You must raise in this petition all grounds for relief that relate to this conviction. Any grounds not raised in this petition will likely be barred from being litigated in a subsequent action.

## GROUND 1

I allege that my state court conviction and/or sentence are unconstitutional, in violation of my

_____ Amendment right to _____,

based on these facts:

_____**SEE ATTACHED PAGES**_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**Exhaustion of state court remedies regarding Ground 1:**

Letter To The Court, Re: GROUND 1


   The Petitioner, KODY CREE PATTEN # 1091721 (hereinafter as "PATTEN"), is using as his GROUND 1, the Ineffective Assistance of Counsel claim written by his state-appointed appellate counsel, RICHARD SEARS. This is taken directly from his "Appellant's Opening Brief", Case No: 82715, that was previously filed in the Nevada Supreme Court.

   PATTEN may have additional GROUNDS. However, because he is not trained in these legal processes, he is unaware of what other issues are appropriate to submit.

   PATTEN is filing with his Petition a Motion to Appoint Counsel. PATTEN hopes that this Court will appoint counsel to ensure fairness in this federal habeas proceeding, so that all his claims that are suitable for review, are properly presented.

   Without adequate understanding of this critical process, PATTEN believes his only option is to merely insert a copy of the issue presented in his "Appellant's Opening Brief."


   DATED this _4th_ day of _July_, 2022.

                              Respectfully,


                              _Kody Cree Patten_  #1091721
                              _____

   KODY CREE PATTEN # 1091721

# GROUND ONE

~~STATEMENT OF FACTS~~ ~~TABLE OF CONTENTS~~

On March, 3 2011, Michaela Costanza, an 18 year old well-liked Elko County high school student went missing after high school. AA I:183. A search was organized by family and friends. Michaela's dead body was found not long after the search began near the Union Pacific railroad tracks just outside of Wendover Nevada, in a shallow grave. Id. 234-235. Prior to her being found but after she was reported missing, rumors went through the community that Kody Patten, a former boyfriend of hers, was responsible. Id. 276-277; 287-288..

After discovery of her body in a shallow grave, local police with the assistance from outside agencies began to investigate the homicide. Suicide was never a possibility due to the circumstances of the body, lacerations to her neck and that were visible while she was being disinterred where the obvious signs of homicide, not suicide. Kody Patten was taken to a law enforcement office and questioned. Kody signed Miranda waivers, and initially denied involvement in the homicide, on March 7, 2011, he confessed after questioning, and being advised by his father to tell the truth. AA I:49-53, II:298.

Toni Fratto, was also suspected in the homicide. AA I:1-13. She interviewed with the law enforcement investigators and denied involvement. *Id.*

3; 1

Approximately one month later, she volunteered to Kody's defense lawyers and admitted her involvement. David Lockie of Elko was appointed to represent her. AA I:179. She accepted a plea agreement and was sentenced for second degree murder with a deadly weapon. *Id.* Part of her agreement was to testify truthfully to the homicide.

After Ohlson interviewed Toni Fratto's father, Claude Fratto, Claude noted to police investigators on June 16, 2021:

> I didn't like him at all. He was too much --- the impression I got was, okay, he took this case. He's going to get Kody off the death sentence, off the death part of it, and then go the next thing, make some other offer it was good . . . I didn't feel like he would represent Kody and investigate all avenues. AA I:159.

## ARGUMENT

ISSUE 1: WHETHER DEFENSE COUNSEL WERE DEFICIENT IN THEIR PERFORMANCE AND IF SO, DID THAT DEFICIENCY PREJUDICE THE DEFENDANT, WHAT RELEVANT FACTS ARE NEEDED TO RESOLVE THE FALSE CONFESSION IN THIS CASE?

The dilemma this case has presented to defense counsel from its inception is not whether or not a homicide occurred. The dilemma in this case is whether the failure to investigate multiple false confessions resulted in an unjust result.

Law enforcement personnel interviewed Kody Patten on three consecutive days, on the third day Kody confessed murdering Michaela

Costanza, a lifelong friend of his. AA I:49-53. He gave details confirming the facts that only the someone who saw her before burial could have known. *Id., passim*. After Kody's homicide confession the case ran along relatively smoothly.  Kody was then living in the Elko county jail and his two attorneys were preparing for trial. John Ohlson and Jeffrey Kump undertook the defense of the case and the case proceeded in the normal fashion for a little over a month.

Delays were of course required in the normal course of preparation for a preliminary hearing in an open murder case and during those delays an unexpected event occurred. Kody went to Lake's Crossing for a competency evaluation by District Court order on May 3, 2011, a report was completed on June 2, 2011. AA I:131.  He was competent to stand trial. *Id.* Kody advised the evaluators his chances the charges could be changed because. "I was just there." Id., AA I:135.

Slightly more than a month and before his Competency Evaluation but after his confession, Kody Patten's live-in girlfriend, Toni Fratto, came forward and told Kody 's father Kip, that she was present when Michaela died.  AA II:290.

After that fact was revealed, Kody's father eventually drove Tony Fratto to a meeting with Ohlson and Kump shortly after April 16, 2011. Id. Ohlson and Kump listened to her story and after she was finished, they realize she needed independent legal counsel, and David Lockie was appointed to represent her.

The revelation by Toni Fratto leads to a few logical conculsions, one was the original confession that was made by Kody Patten was false in material aspects.

Also, the original interview denying involvement or participation that Tony Fratto gave to the investigators was false.

At this point the defense lawyers had multiple confessions by two percipient witnesses to the homicide of Michaela Costanza. In addition, one obvious question must have arisen in defense counsel's mind: Why did Toni Fratto come forward and confess to homicide when everybody "knew all along" Kody Patten committed the crime, and his confession never involved Toni Fratto in its commission?

As this case continued to work its way toward trial, the prosecutor, District Attorney Mark Torvinen, made an offer to the defense attorneys agreeing to resolve the case without the death penalty, at least, for the first

3; 4

defendant who would tell what happened causing the death of Michaela Costanza.

At first, Kody Patten appeared willing to give an accurate account of the events, but after providing a recorded proffer to the district attorney, Patton changed his mind and refused to make a deal. AA 91-111. There is no information in the record about why this deal was rejected.

Apparently, Toni Fratto accepted the deal offered by DA Torvinen and was granted the privilege pleading to a second-degree murder charge which carried a lesser sentence. *See* AA I-II, 178-343. She then gave another recorded confession that resulted in Kody Patten pleading guilty to first degree murder in exchange for the government's promise not to seek the death penalty in his case. *Id*.

The defendants were sentenced in due course, and Kody was given life in prison without the possibility of parole.

Since this post-conviction writ case is only concerned with the performance of Ohlson and Kump, only the facts, options and arguments available to them are relevant for any reviewing court's consideration, if the case is entitled to review at all. Because of the nature of the crime and the multiple confessions by Kody and Toni implicating --- or not --- themselves

3; 5

and each other, the "doors" for both criminal detainees was never "cake or prison": the doors were 1) death, 2) prison for their natural life, 3) or prison for a term of years. Kody eventually took door 2.

On one hand, a reviewing court may decide whether after reviewing the facts, options, and arguments available to Ohlson and Kump, their performance was consistent with the standards for effective assistance of counsel.

On the other hand, a reviewing court may ignore the performance issue if there was no prejudice to the defendant without regard to counsel's performance. A failure of proof on either issue resolves ineffective assistance of counsel claims to nil.

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not

become so burdensome to defense counsel that the entire
criminal justice system suffers as a result.
*Strickland v. Washington*, 466 U.S. 668 (1984).

In short, the mere fact that Ohlson and Kump committed errors is
only important when the errors worked prejudice to the defendant.  If their
performance did work prejudice, Kody must show the performance
amounted to deficient performance.

This is a very high burden when the case involves a plea agreement.
this is because a thorough plea canvas was completed by the court in this
matter and the court found that the plea was entered knowingly, voluntarily
and a full factual basis was provided by Kody at the plea hearing.

In many ways, this case is somewhat similar to the *Strickland* case
quoted above.  In Strickland, the defendant entered a plea to three
homicides, and the alleged errors revolved around deficiencies during
sentencing preparation: failures to investigate and call mitigating
witnesses, and a tactical decision not to seek a presentence report from the
state, among others.

The significant difference in this case is, at minimum the first
confession to the homicide provided by Kody during the pre-sentence
phases were false with respect to important material facts.  After deceiving

3; 7

the investigators about his lack of involvement, Kody lied in his initial confession by deceiving the investigating officers into believing he was the only participant in the murder, hiding his girlfriend, Toni Fratto's active participation in the homicide. Participation which she later confessed to Ohlson and Kump, DA Torvinen, her legal counsel David Lockie, and ultimately to the court.

In simple terms the proceedings to commitment were initiated by a false confession, a matter of significance due to the extensive work done by the well-known Innocence Project. That project has successfully freed hundreds of persons who were found to be innocent of criminal acts for which they were convicted and imprisoned.

A significant percentage of those innocent persons confessed to crimes they did not commit. A false confession of guilt runs counter to common sense: *No one would confess to a serious felony crime unless they had committed the crime*, on the other hand, one would be expected to lie about one's involvement to avoid prosecution.

This common sense conclusion was relied upon by the *Strickland* court when it determined that plea agreements were different because there was no trial; therefore the performance prong and prejudice prong of

3; 8

defense counsel were not material if the deficiencies occurred before the plea.

When discussing the circuit court's analysis of the investigation issue, the Supreme Court noted the lower court's treatment of guilty-plea cases:

> Nevertheless, putting guilty-plea cases to one side, the court attempted to classify cases presenting issues concerning the scope of the duty to investigate before proceeding to trial. *Id*, at 680.

Despite this statement about plea cases, the Supreme Court determined that the sentencing proceeding in *Strickland* was sufficiently trial like that their analysis applied to the sentencing proceeding.[1] No other statement was made regarding the scope of the duty to investigate that should occur in a guilty plea case. Conceivably, at least under *Strickland*, the only duty that kicks in once a plea has been entered is an investigation regarding sentencing factors: mitigation and aggravation.

---

[1] that counsel's role in the proceeding is comparable to counsel's role at trial—to ensure that the adversarial testing process works to produce a just result under the standards governing decision. For purposes of describing counsel's duties, therefore, Florida's capital sentencing proceeding need not be distinguished from an ordinary trial. *Id.*, 687.

3; 9

The underpinnings of this then new *Strickland* standard of judging counsel's performance was grounded in the Sixth Amendment to the federal constitution:

> The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results.
> Id., at 685.

In this case, counsel argues that even though this was a plea, the goal of plea proceedings remains the same, a just result.

This can be seen in the jurisprudence in Nevada that focuses the analysis in a post-conviction writ case on a fundamental miscarriage of justice, in other words, actual innocence not legal innocence:

> In order to demonstrate a fundamental miscarriage of justice, a petitioner must make a colorable showing of actual innocence— factual innocence, not legal innocence. *Pellegrini*, 117 Nev. at 887, 34 P.3d at 537; *see Calderon v. Thompson*, 523 U.S. 538, 559, 118 S. Ct. 1489, 140 L. Ed. 2d 728 (1998). Actual innocence means that "it is more likely than not that no reasonable juror would have convicted him in light of . . . new evidence.'" *Calderon*, 523 U.S. at 559 (quoting *Schlup v. Delo*, 513 U.S. 298, 327, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995)); *see also Pellegrini*, 117 Nev. at 887, 34 P.3d at 537.
> *Brown v. McDaniel*, 130 Nev. 565, 576, 331 P.3d 867, 875 (2014).

The District Court here denied Kody's Post-Conviction Petition summarily, without granting an evidentiary hearing. The principal reasoning was simply the absence of prejudice because Kody Patten confessed to first degree murder. The court concluded the confession precludes any performance error, because he confessed; in the same vein, there was no prejudice, because he confessed. This circularity in reasoning is not uncommon, it is normal in plea appeals. Almost all plea cases a waiver of silence at the plea hearing and a judicial confession, and that confession ripens into the reason for denying post-conviction relief. In *Strickland*, the court was aware that Strickland's counsel gave evidence of a feeling of hopelessness due to the many confessions by his client, that he did not perform some investigations for sentencing as a tactical matter. The Supreme Court analyzed the facts of his performance and prejudice concerns and found that the evidence when compared to their newly decided standard did not rise to the level of significant deficiencies or prejudice.

Because we have no evidence from either Ohlson or Kump in the record of their investigation or options or decisions, we cannot know if either deficiency occurred or prejudice happened.

3; 11

The District Court here denied Kody's Post-Conviction Petition summarily, without granting an evidentiary hearing. The principal reasoning was simply the absence of prejudice because Kody Patten confessed to first degree murder. The court concluded the confession precludes any performance error, because he confessed; similarly there was no prejudice, because he confessed. This circularity in reasoning is not uncommon, it is normal in plea appeals. Almost every plea involves a confession, and the confession is the reason for denying post-conviction evidentiary hearing.

But, we know that both counsel were lied to by Kody from the start of the representation. We do not know if, or when the lying stopped. We believe that lawyers who are bound by professional ethics to maintain client confidences are not obligated to reveal those confidences unless a waiver occurs, as in a post-conviction writ. Therefore, neither counsel has revealed any client confidences.

We have been advised that Toni Fratto made jail statements exonerating Kody from participation in the murder. We do not know whether that evidence was investigated for either sentencing mitigation or guilt purposes.

We do know that all counsel interviewed Toni Fratto, someone who was, or would be, clearly in conflict with Kody Patten once she confessed her presence at the homicide. Joint homicide perpetrators often point fingers at each other to lessen their own guilt, whether effective or not. We argue that once learning of Toni Fratto's presence at the homicide, any conversations with her should have stopped to prevent a conflict. They apparently did not since the recorded conversation continued. However, we cannot find out why it was not stopped because no evidentiary hearing has been granted in this matter.[2]

During a portion of the time after Toni Fratto's incarceration, this case was still a death penalty case, whether during that phase of the representation actions were taken to determine the truth behind Fratto's admissions are unknown. Whether that investigation should have been undertaken is clear based on Federal case law that was not disapproved of by the Supreme Court in *Strickland v. Washington*.

_____

[2] Relying upon the decision of the former fifth circuit in *Beavers v. Balkcom, 636 F.2d 114, 116 (5th Cir.1981)*, the court held that defense counsel in a capital case has a duty to investigate mitigating evidence irrespective of whether counsel's strategy at trial would require the use of such evidence.
*Washington v. Strickland*, 693 F.2d 1243, 1249 (11th Circuit Court,1982).

Even Strickland's attorney was able to give evidence under oath that bore on his competence at sentencing; we argue that Patten's attorneys should be granted the same opportunity.[3]

It is true that The Supreme Court in *Strickland* did not require evidentiary hearings in every case; it is also true that attempting to demonstrate "manifest injustice" in a plea case has been described as a Herculean effort, but neither observation means that this case is not appropriate for an evidentiary hearing to examine performance and prejudice. Here's why.

If, for example, the Fratto admissions are sufficient to indicate that Toni was the actual killer, and Kody, instead of aiding and abetting, stood by stunned until Michaela was dead, would that material difference in the facts of the case matter? If not, then potentially no evidentiary hearing would be required.

---

3 Mr. Tunkey was Strickland's trial and plea counsel, he was widely recognized as a fine defense lawyer, he did not represent Strickland at the post-conviction proceeding but did give evidence at a federal district court hearing, not in the Florida court because there, as here, no evidentiary hearing was provided in state court.

3; 14

But that set of facts just posited does not, without much more, support aiding and abetting, conspiracy, principal liability, or even felony murder.  The law reads:

> NRS 195.020   Principals.   Every person concerned in the commission of a felony, gross misdemeanor or misdemeanor, whether the person directly commits the act constituting the offense, or aids or abets in its commission, and whether present or absent; and every person who, directly or indirectly, counsels, encourages, hires, commands, induces or otherwise procures another to commit a felony, gross misdemeanor or misdemeanor is a principal, and shall be proceeded against and punished as such. The fact that the person aided, abetted, counseled, encouraged, hired, commanded, induced or procured, could not or did not entertain a criminal intent shall not be a defense to any person aiding, abetting, counseling, encouraging, hiring, commanding, inducing or procuring him or her.

Counsel is not "supposing" that Kody was committed to taking the blame, (AA II:289) Kody demonstrated his desire to take full responsibility for the homicide in this case by telling lies to investigators about Toni's absence from the scene.  Toni was in agreement with Kody's deception tactics by telling similar lies to investigators about her ignorance of the murder. *Id.*

These two serial deceivers may have planned their approach to accusation within a short time after the homicide.  Kody was on track to enter the Marine Corps upon graduation from high school which he

3;   15

expected to achieve in a couple months.  The decision to murder Michaela

Costanza was not consistent with the plan to serve his country and made no

sense under the circumstances.  His desire to take the blame is completely

consistent with a young man's desire to protect his lover whatever the result

or injury to him.  However, none of this was explored from a review of the

record below and once his change of plea was complete, her admissions

were apparently never investigated by anyone, based upon an absence in

the record.  After review of the exoneration statistics from the University of

Michigan in the publication EXONERATIONS IN THE UNITED STATES, 1989-

2012, available at www.exonertions.org, such false confessions are not

terribly unusual but we have little way to measure the real scope of the

problem systemwide.[4]

---

[4] About one-fourth of the exonerees who confessed in police interrogations later pled guilty in
court (35/135), compared to 5% of exonerees who did not confess (36/738). The rest recanted
their false confessions and went to trial. Overall, 8% of exonerees in our data were convicted by
guilty pleas (71/873), a higher rate than in the 2003 Report – 6% (20/340) – but startlingly few
for a system in which 95% of felony convictions are the products of guilty pleas.
This does not mean that innocent defendants hardly ever plead guilty. Very likely, the great
majority of those innocent criminal defendants who are convicted do plead guilty – but they are
rarely exonerated. Defendants who plead guilty have an exceptionally hard time convincing
anybody of their innocence or even getting a hearing. Even more important, they almost always
get much lighter sentences than defendants who go to trial – that's *why* they plead guilty – so
neither they nor anybody else has much of an incentive to pursue exoneration. Consider this
case:
In April 2004, after four hours of aggressive interrogation without his parents or a lawyer, 12-
year-old Jonathan Adams admitted that he killed nine-year-old Amy Yates in Carrollton,

In this case, on the record, no false confession investigation was conducted and no defense was asserted.  This is puzzling where we have clear evidence in the record that both suspects deceived law enforcement throughout their investigation.  After all that deception, either both of Kody's counsel and the plea court assumed the deception had stopped, or did not care whether it had stopped or not.  The extent of the false confessions by both Kody and Toni may be significant, or insignificant to a just cause.  Without at least some evidence, a just cause may be out of reach in this case.

---

Georgia. About a year later, he pled guilty in juvenile court and was sentenced to 12 months in a residential psychiatric treatment facility. Six months later, a mentally-challenged 18-year-old confessed to killing the girl, saying he wanted to make the truth known as part of a spiritual transformation. Two months later, Adams was released.

If the actual killer had not voluntarily come forward, Adams would never have been exonerated. Chances are that nobody would even have tried to prove his innocence. We know of 28 exonerated defendants who confessed, pled guilty and received long prison sentences ranging from 10 years to life, but only six (including Adams) who were sentenced to less than 10 years. It may well be that most innocent defendants who plead guilty, like Adams, get comparatively light sentences, and try to put the whole episode behind them as rapidly as possible. It makes sense: confessions are extremely hard to overcome in court, and the penalty for going to trial and losing may be huge, up to and including the defendant's life.[85] But we don't know. By trial or by plea, with or without a confession, the only false convictions we know about are those few that end in exoneration.

Exonerations in the U.S., 1989-2012 6/22/2012, pp.60-61

3;   17

**Notice of attached page:**

Although, on the state habeas appeal, appointed appellate counsel included the "appendix", here, PATTEN includes a page from the State's Opposition to his state petition (and supplemental petition)¹.

PATTEN believes that under fn 2; Line 28, supports the merits of GROUND 1, because it shows that the state is aware of PATTEN's false confession:

"... Patten's credibility was completely obliterated

years ago."


This supports PATTEN's Ineffective Assistance of Counsel claim that the acceptance of the plea bargain amounts to a miscarriage of justice.


¹ This page was taken from the "appendix".




Submitted by:

*Kody Cree Patten* #1091721
Kody Cree Patten # 1091721

Assuming this conversation between Patten and his attorney actually happened the way Patten claims it happened, and what he claims was said is accurate, Patten only claims "Counsel Prejudice by lead lawyer" but doesn't say how.   Moreover, if Counsel told Patten that he's not taking the deal after Patten told him that he didn't kill Micaela, that would be sound advice because Patten would have been unable to provide a sufficient factual basis for a guilty – not a nolo contendere – plea.  This ground is bare and conclusory and should be denied without an evidentiary hearing.

**GROUND S1**

    A.    Counsel was ineffective because:

        1.  Counsel failed to fully advise Patten of all of his defenses to first degree murder prior to entry of a guilty plea, including the 'pretrial phase of defense."

Patten argues that Counsel failed to advise him of the defenses to first degree murder.  At this point, without hearing from Patten's attorneys, we don't know what they advised him of or didn't advise him of.  Assuming, arguendo, that Counsel didn't advise him of possible defenses – which seems very unlikely given the fact that both attorneys are highly regarded and bring decades of experience – Patten must show that but for his attorney's failure to explain his defenses that he would have proceeded to trial.[2] That's a tough row to hoe given the enormous amount of evidence against him, including his confession and his co-defendant's confession which implicated him, on top of facing the death penalty if this case went to trial.

This was a brutal killing to which the defendant confessed – what defenses did Patten think he had?  He didn't do it?  No.  He committed a lesser degree of murder?

---

[2] It's also important to note that Patten, years after conviction, is the sole source of the assertion that his attorneys didn't fully advise him of defenses.  Not only should the court consider faded memory with this length of time, it should also consider that Patten's credibility was completely obliterated years ago.

▸   **Direct Appeal:**

Did you raise this issue on direct appeal from the conviction to the Nevada Supreme Court?

___ Yes  **X** No.  If no, explain why not:   Ineffective Assistance of Counsel claims are to

be raised in a Petition for Writ of Habeas Corpus (post-conviction)

▸   **First Post Conviction:**

Did you raise this issue in a petition for post conviction relief or state petition for habeas corpus?

**X** Yes  ___  No.  If no, explain why not:   _____

_____.

If yes, name of court: 4 TH JUDICIAL DISTRICT COURT          date petition filed 02 / 20 / 2013 .

Did you receive an evidentiary hearing? ___ Yes  **X** No.  Did you appeal to the Nevada Supreme

Court? **X** Yes  ___ No.  If no, explain why not:   _____

_____.

If yes, did you raise this issue? **X** Yes  ___  No.  If no, explain why not:   _____

_____.

▸   **Second Post Conviction:  N/A**

Did you raise this issue in a **second** petition for post conviction relief or state petition for habeas corpus?

___ Yes  ___ No.  If yes, explain why:   _____

_____.

If yes, name of court:  _____   date petition filed ___ / ___ / ____ .

Did you receive an evidentiary hearing? ___ Yes  ___  No.  Did you appeal to the Nevada Supreme

Court?___ Yes  ___ No.  If no, explain why not:   _____

_____.

If yes, did you raise this issue?___ Yes  ___  No.  If no, explain why not:   _____

_____.

▸   **Other Proceedings:  N/A**

Have you pursued any other procedure/process in an attempt to have your conviction and/or

sentence overturned based on this issue (such as administrative remedies)?  ___ Yes  ___ No.  If yes,

explain:  _____

_____.

**State concisely every ground for which you claim that the state court conviction and/or sentence is**

unconstitutional.  Summarize briefly the facts supporting each ground.  You may attach up to two extra pages stating additional grounds and/or supporting facts. You must raise in this petition all grounds for relief that relate to this conviction.  Any grounds not raised in this petition will likely be barred from being litigated in a subsequent action.

## GROUND 2

I allege that my state court conviction and/or sentence are unconstitutional, in violation of my

_____ Amendment right to _____,

based on these facts:

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**Exhaustion of state court remedies regarding Ground 2:**

▸     **Direct Appeal:**

5

Did you raise this issue on direct appeal from the conviction to the Nevada Supreme Court?

____ Yes ____ No. If no, explain why not: _____

_____.

▸ **First Post Conviction:**

Did you raise this issue in a petition for post conviction relief or state petition for habeas corpus?

____ Yes ____ No. If no, explain why not: _____

_____.

If yes, name of court: _____ date petition filed ___ / ___ / ___.

Did you receive an evidentiary hearing? ___ Yes ___ No. Did you appeal to the Nevada Supreme

Court?___ Yes ___ No. If no, explain why not: _____

_____.

If yes, did you raise this issue?___ Yes ___ No. If no, explain why not: _____

_____

▸ **Second Post Conviction:**

Did you raise this issue in a **second** petition for post conviction relief or state petition for habeas corpus?

____ Yes ____ No. If yes, explain why: _____

_____.

If yes, name of court: _____ date petition filed ___ / ___ / ___.

Did you receive an evidentiary hearing? ___ Yes ___ No. Did you appeal to the Nevada Supreme

Court?___ Yes ___ No. If no, explain why not: _____

_____.

If yes, did you raise this issue?___ Yes ___ No. If no, explain why not: _____

_____

▸ **Other Proceedings:**

Have you pursued any other procedure/process in an attempt to have your conviction and/or

sentence overturned based on this issue (such as administrative remedies)? ___ Yes ___ No. If yes,

explain: _____

_____.

**State concisely every ground for which you claim that the state court conviction and/or sentence is**

**unconstitutional. Summarize briefly the facts supporting each ground. You may attach up to two**

extra pages stating additional grounds and/or supporting facts. You must raise in this petition all grounds for relief that relate to this conviction.  Any grounds not raised in this petition will likely be barred from being litigated in a subsequent action.

### GROUND 3

I allege that my state court conviction and/or sentence are unconstitutional, in violation of my
_____ Amendment right to _____,
based on these facts:

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**Exhaustion of state court remedies regarding Ground 3:**

▸      **Direct Appeal:**

Did you raise this issue on direct appeal from the conviction to the Nevada Supreme Court?

___ Yes  ___ No.  If no, explain why not:  _____  _____

_____.

▸   **First Post Conviction:**

Did you raise this issue in a petition for post conviction relief or state petition for habeas corpus?

___ Yes  ___ No.  If no, explain why not:  _____

_____.

If yes, name of court: _____  date petition filed ___/___/___.

Did you receive an evidentiary hearing?  ___ Yes  ___ No.  Did you appeal to the Nevada Supreme

Court?___ Yes  ___ No.  If no, explain why not:  _____

_____.

If yes, did you raise this issue?___ Yes  ___ No.  If no, explain why not:  _____

_____.

▸   **Second Post Conviction:**

Did you raise this issue in a **second** petition for post conviction relief or state petition for habeas corpus?

___ Yes  ___ No.  If yes, explain why:  _____

_____.

If yes, name of court: _____  date petition filed ___/___/___.

Did you receive an evidentiary hearing?  ___ Yes  ___ No.  Did you appeal to the Nevada Supreme

Court?___ Yes  ___ No.  If no, explain why not:  _____

_____.

If yes, did you raise this issue?___ Yes  ___ No.  If no, explain why not:  _____

_____.

▸   **Other Proceedings:**

Have you pursued any other procedure/process in an attempt to have your conviction and/or

sentence overturned based on this issue (such as administrative remedies)?  ___ Yes  ___ No.  If yes,

explain:  _____

_____.

     **WHEREFORE,** petitioner prays that the court will grant him such relief to which he is

entitled in this federal petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 by a person in

state custody.

___RICHARD SEARS, ESQ.___
(Name of person who wrote this
complaint if not Plaintiff )

_Signature_ (Signature of Plaintiff)

_7/4/22_
(Date)

___N/A___
(Signature of attorney, if any)

_____
_____
_____
(Attorney's address & telephone number)

**fn 1:** The Petitioner, KODY CREE PATTEN # 1091721, does not adequately understand how to prepare this Petition, and has enclosed the Ground from his Appeal, written by appellate counsel.

## DECLARATION UNDER PENALTY OF PERJURY

I understand that a false statement or answer to any question in this declaration will subject me to penalties of perjury.  **I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.** See 28 U.S.C. § 1746 and 18 U.S.C. § 1621.

Executed at __LOVELOCK CORRECTIONAL CENTER__ on _7/4/22_.
(Location)                                                (Date)

_Signature_ (Signature)          __#1091721__
                                 (Inmate prison number)

9